FJN/CRH:NDB/AA
F. #2019R00946

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ABOLFAZL BAZZAZI,
    also known as "Abolfath Bazzazi," and
MOHAMMAD RESA BAZZAZI,
    also known as "Mohad Resa" and
    "Resa,"

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. 24-CR-60
(T. 18, U.S.C., §§ 554(a), 981(a)(1)(C),
2 and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c);
T. 50, U.S.C., §§ 1705(a) and 1705(c))

Judge Diane Gujarati
Magistrate Judge Peggy Kuo

THE GRAND JURY CHARGES:

**INTRODUCTION**

At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>The Defendants and Relevant Entities</u>

    1.    The defendant ABOLFAZL BAZZAZI, also known as "Abolfath Bazzazi," was an Iranian national who resided in Iran, and was a Managing Director of a company located in Iran (the "Iranian Company"), an entity the identity of which is known to the Grand Jury.

    2.    The defendant MOHAMMAD RESA BAZZAZI, also known as "Mohad Resa" and "Resa," was an Iranian national who resided in Iran, was a Managing Director of the Iranian Company and was the son of ABOLFAZL BAZZAZI.

3. The Iranian Company was an Iran-based importer of technology and equipment, including equipment used in the Iranian military and aerospace industry.

4. Company 1, an entity the identity of which is known to the Grand Jury, was a Minnesota-based manufacturer of fire and gas-safety systems. Company 1 manufactured ultraviolet flame detectors, which provided advanced flame detection capabilities ("Flame Detectors"). Flame Detectors were typically used in the military and aviation industry, and in locations that contain highly valuable but combustible materials, which require reliable and instantaneous response to flame and automated fire protection.

5. Company 2, an entity the identity of which is known to the Grand Jury, was a North Carolina-based manufacturer of fire safety products. Company 2 manufactured fire safety electronics and components ("Fire Safety Components"), which were used in the military, aerospace and firefighting industries.

II. The International Emergency Economic Powers Act and the Iranian Transactions and Sanctions Regulations

6. The International Emergency Economic Powers Act ("IEEPA"), codified at Title 50, United States Code, Sections 1701 et seq., granted the President of the United States authority to deal with unusual and extraordinary threats to the national security, foreign policy and economy of the United States. 50 U.S.C. § 1701(a). Pursuant to that authority, the President could declare a national emergency through Executive Orders that had the full force and effect of law.

7. Under IEEPA, it was a crime to willfully violate, attempt to violate, conspire to violate or cause a violation of any license, order, regulation or prohibition issued pursuant to the statute. 50 U.S.C. § 1705(a). Pursuant to Section 1705(c), any person who

willfully committed, attempted to commit, conspired to commit, or aided and abetted in the commission of any unlawful act as described in subsection (a) of the statute was guilty of a crime.

8. In approximately 1995 and again in 1997, the President issued a series of Executive Orders regulating transactions with Iran pursuant to his authorities under IEEPA. See Executive Orders 13059 (Aug. 19, 1997), 12959 (May 6, 1995) and 12957 (Mar. 15, 1995). Since 1997, each President has continued the national emergency with respect to Iran and those Executive Orders. The most recent continuation of this national emergency was on or about November 7, 2023.

9. To respond to the national emergency with respect to Iran, the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") issued the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. Part 560. Absent permission from OFAC in the form of a license, these regulations prohibited, among other things:

(a) The exportation, re-exportation, sale or supply, directly or indirectly, from the United States, or by a U.S. person, wherever located, of any goods, technology or services to Iran and the Government of Iran, including the exportation, re-exportation, sale or supply of any goods, technology or services to a person in a third country undertaken with knowledge or reason to know that such goods, technology or services were intended specifically for supply, trans-shipment or re-exportation, directly or indirectly, to Iran or the Government of Iran (31 C.F.R. § 560.204);

(b) The re-exportation from a third country, directly or indirectly, by a person other than a U.S. person, of any goods, technology or services that have been exported from the United States, if: (a) such re-exportation was undertaken with knowledge

or reason to know that the re-exportation is intended specifically for Iran or the Government of Iran, and (b) the exportation of such goods, technology or services was subject to export license application requirements under any regulations (31 C.F.R. § 560.205);

(c)  Any transaction by a U.S. person, wherever located, involving goods, technology or services for exportation, re-exportation, sale or supply, directly or indirectly, to Iran or the Government of Iran (31 C.F.R. § 560.206); and

(d)  Any transaction by any U.S. person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, or attempted to violate, any of the prohibitions in the ITSR (31 C.F.R. § 560.203).

III.  The Fraudulent Scheme

10.  In or about and between January 2008 and August 2019, both dates being approximate and inclusive, the defendants ABOLFAZL BAZZAZI and MOHAMMAD RESA BAZZAZI, together with others, devised and executed a scheme to cause the export of goods and technology from the United States, including aeronautical ground support equipment such as Flame Detectors from Company 1 and Fire Safety Components from Company 2 and their associated parts and technology (the "Sanctioned Technology") to Iran, in contravention of federal law and regulations.

11.  In furtherance of the scheme, the defendants ABOLFAZL BAZZAZI and MOHAMMAD RESA BAZZAZI, and their co-conspirators, agreed to ship and attempted to ship the Sanctioned Technology first to intermediaries in non-sanctioned countries located in Europe and elsewhere. Thereafter, the defendants' co-conspirators conspired to and attempted to forward the Sanctioned Technology to the Iranian Company and the defendants in Iran.

## COUNT ONE
(Conspiracy To Violate IEEPA)

12. The allegations contained in paragraphs one through 11 are realleged and incorporated as if fully set forth in this paragraph.

13. In or about and between January 2008 and August 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ABOLFAZL BAZZAZI, also known as "Abolfath Bazzazi," and MOHAMMAD RESA BAZZAZI, also known as "Mohad Resa" and "Resa," together with others, did knowingly and willfully conspire to violate the IEEPA, contrary to Title 50, United States Code, Section 1705 and Title 31, Code of Federal Regulations, Sections 560.203, 560.204, 560.205 and 560.206.

14. It was a part and an object of the conspiracy that the defendants ABOLFAZL BAZZAZI and MOHAMMAD RESA BAZZAZI, together with others, did knowingly and willfully violate the IEEPA, and the regulations promulgated thereunder, to wit: BAZZAZI and RESA BAZZAZI and their co-conspirators exported, reexported, sold and supplied, directly and indirectly, and caused U.S. persons and entities to export, reexport, sell and supply, directly and indirectly, goods and technology from the United States, to wit: aeronautical ground support equipment, UV-detectors and firefighting equipment, parts and technology, to Iran and to the Government of Iran, without first obtaining the required

approval of OFAC, contrary to Title 31, Code of Federal Regulations, Sections 560.203, 560.204, 560.205 and 560.206.

(Title 50, United States Code, Sections 1705(a) and 1705(c); Title 18, United States Code, Sections 3551 et seq.)

## COUNT TWO
(Attempted Smuggling)

15. The allegations contained in paragraphs one through 11 are realleged and incorporated as if fully set forth in this paragraph.

16. In or about and between January 2008 and August 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ABOLFAZL BAZZAZI, also known as "Abolfath Bazzazi," and MOHAMMAD RESA BAZZAZI, also known as "Mohad Resa" and "Resa," together with others, did fraudulently and knowingly export and send, attempt to export and send, and cause to be exported and sent from the United States, merchandise, articles and objects, to wit: aeronautical ground support equipment, UV-detectors and firefighting equipment, parts and technology, contrary to United States laws and regulations, to wit: Title 50, United States Code, Section 1705 and Title 31, Code of Federal Regulations, Sections 560.203, 560.204, 560.205 and 560.206, and did fraudulently and knowingly receive, conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to be intended for exportation contrary to such United States laws and regulations.

(Title 18, United States Code, Sections 554(a), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

17. The United States hereby gives notice to the defendants that, upon their conviction of either of the offenses charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

18. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been comingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property as described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

*By Carolyn Pokorny, Assistant U.S. Attorney*
_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #:2019R00946
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

ABOLFAZL BAZZAZI, also known as "Abolfath Bazzazi," and
MOHAMMAD RESA BAZZAZI, also known as "Mohad Resa" and
"Resa,"

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 554(a), 981(a)(1)(C), 2 and 3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28, U.S.C., § 2461(c); T. 50, U.S.C., §§ 1705(a)
and 1705(c))

*A true bill.*

_____

*Foreperson*

*Filed in open court this* _____ *day,*
*of* _____ *A.D. 20* _____   _____

*Clerk*

Bail, $ _____

*Nomi D. Berenson and Adam Amir, Assistant U.S. Attorneys 718-254-7000*